Filed 12/6/22  State of California v. Fishman CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STATE OF CALIFORNIA et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>BRUCE E. FISHMAN et al.,<br><br>  Defendants and Respondents;<br><br>PATRICK NAZEMI et al.,<br><br>  Objectors and Appellants. | B307407<br>(c/w B310195, B311594)<br><br>(Los Angeles County<br>Super. Ct. No. BC648395) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Randolph W. Hammock, Judge.  Reversed.

The Tym Firm and Ronald D. Tym for Plaintiffs and Appellants.

Klapach & Klapach and Joseph S. Klapach for Objectors and Appellants.

Law Offices of Howard A. Kapp and Howard A. Kapp for Defendants and Respondents.

_____

This appeal is just one slice of contentious litigation between appellants Patrick Nazemi (Nazemi), GLC Operations, Inc. (GLC Operations), and Med-Legal Associates, Inc. (Med-Legal), and GLCI, Inc. (GLCI),[1] and respondents Dr. Bruce E. Fishman (Dr. Fishman) and his medical entity, Bruce E. Fishman, M.D., FICS, Inc. (collectively Fishman). The appeal concerns three issues resulting from the judgment in the underlying qui tam action: (1) The propriety of the trial court's order granting Fishman's motion for judgment on the pleadings; (2) Whether the trial court abused its discretion in awarding Fishman attorney fees; and (3) The correctness of the trial court's order adding Nazemi and GLC Operations as judgment debtors.

We conclude that the trial court erroneously granted Fishman's motion for judgment on the pleadings. We therefore reverse the judgment. It follows that appellants' challenges to

_____

[1] Appellants are broken down into two categories: the objectors (Nazemi and GLC Operations) and the relators (Med-Legal and GLCI). "A 'relator' has been described thus: 'The real party in interest in whose name a state or an attorney general brings a lawsuit.'" (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 538, capitalization omitted.)

(1) the award of attorney fees, and (2) order adding Nazemi and GLC Operations to the judgment as judgment debtors are moot.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

*Dr. Fishman's Criminal Conviction*

In 1983, while he was a medical resident, Dr. Fishman was named in a Michigan federal indictment; he later pled guilty to a single count of conspiracy to distribute a controlled substance pursuant to 21 United States Code section 846. As a result, his medical license had been revoked in both California and Michigan. (*Med-Legal Associates, Inc. v. Fishman* (Mar. 8, 2019), B284731 [nonpub. opn.], pp. *3–*4.)

*Medical Board of California Reinstates Dr. Fishman's License*

In or about August 1989, Dr. Fishman applied to the Medical Board of California (Medical Board) for reinstatement of his California medical license. Ultimately, the Medical Board determined that Dr. Fishman had "established that he is sufficiently rehabilitated so that it would not be adverse to the public interest to restore [his] certificate in a probationary status." Thus, the Medical Board reinstated Dr. Fishman's certificate to practice medicine for a probationary period of five years.

In 1993, Dr. Fishman applied for early termination of the five-year probation. The administrative law judge (ALJ) lifted all restrictions from Dr. Fishman's license, noting: "As a very young man, [Dr. Fishman] engaged in a criminal activity. He has

---

[2] We express no opinion on those orders, and nothing herein precludes the trial court from later awarding Fishman attorney fees and adding Nazemi and GLC Operations as judgment debtors.

3

served his prison sentence and completed parole. He has successfully returned to medical practice and has complied with all of the terms of his probation. [¶] [He] has worked so hard to rebuild his professional life, and his profession is so important to him, that it is highly improbable that he would ever again engage in any activity, including criminal conduct, which would jeopardize that profession. [¶] [He] has demonstrated that he has the professional and ethical qualifications required of a departmental licensee and that he is capable of practicing medicine without special restriction." Thus, probation was lifted and his certificate was reinstated without restriction.

*Dr. Fishman Becomes a Qualified Medical Examiner (QME)*

In 2003, Dr. Fishman applied to the Department of Industrial Relations (DIR) Division of Workers' Compensation to become a QME. (Lab. Code, § 139.2.) Dr. Fishman was appointed to be a QME and then reappointed several times thereafter.

*Business Relationship Between Fishman and Nazemi*

In 2008, Dr. Fishman entered into a relationship with Green Lien Collections, Inc., a company owned by Nazemi. In 2011, Nazemi formed Med-Legal "'with the intent to provide management services to med-legal providers.'" (*Med-Legal Associates, Inc. v. Fishman*, *supra*, B284731, at p. *2.) Effective November 1, 2012, Med-Legal and Fishman entered into a management services agreement. During the first year of that agreement, the relationship between Dr. Fishman and Med-Legal deteriorated. (*Id*. at p. *2.)

4

*Procedural History*

At this point, three relevant separate and independent procedural timelines begin.[3]

A. <u>Arbitration between Fishman and Med-Legal</u>

Med-Legal, represented by Mr. Tym, filed a petition for arbitration against Fishman, and Fishman filed a cross-claim against Med-Legal. (*Med-Legal Associates, Inc. v. Fishman*, *supra*, B284731, at p. *5.) The gist of Med-Legal's claim was that Dr. Fishman failed to disclose his criminal conviction to Med-Legal. (*Id*. at pp. *4–*5.) After a five-day hearing, in February 2017, the arbitrator issued a final award in favor of Fishman. (*Id*. at pp. *5, *8.) Med-Legal's petition to vacate the arbitration award was denied, and judgment was entered in favor of Fishman. (*Id*. at pp. *11, *13.) Med-Legal appealed, and on March 8, 2019, we affirmed the judgment. (*Id*. at p. *1.)

B. <u>Qui Tam Action</u>

1. *Pleadings*

While the arbitration was pending, in January 2017, Nazemi, GLC Operations, and Med-Legal, represented by Mr. Tym, filed the instant qui tam action against Fishman, alleging that Dr. Fishman lied on his application (concealing a felony conviction) to serve as a QME in connection with the examination of injured workers for purposes of eligibility for workers' compensation benefits. The original relators asserted claims under the Insurance Frauds Prevention Act (IFPA) (Ins. Code, § 1871 et seq.) and the False Claims Act (Gov. Code,

---

[3] For the sake of completeness, we note that while all of these actions were progressing, on October 21, 2019, Med-Legal, represented by Ronald D. Tym, also filed an action in federal court against Fishman.

§ 12650 et seq.). In October 2017, the Insurance Commissioner and Attorney General declined to intervene.

Nearly one year later, in December 2017, the operative first amended complaint (FAC) was filed by Mr. Tym. The FAC asserted claims for violation of the IFPA and the False Claims Act. Under the FAC, Med-Legal and a new relator, GLCI, were the only relators. Nazemi and GLC Operations were not named as relators in this pleading.

The FAC alleges, in relevant part, that Fishman violated the IFPA between 2003 and 2014 by improperly seeking and obtaining payment for medical reports that Dr. Fishman prepared while he was acting as a "purported QME." He never should have been a QME because he fraudulently hid his criminal conviction from the DIR Division of Workers' Compensation.

The FAC further alleges that "[e]ach time that a billing statement or medical legal report of Fishman was submitted to the insurance companies in support of a payment, the Defendant [was] submitting or causing the submission of the billing statement and medical legal report made the implied certification that Fishman lawfully qualified for participation in the workers compensation system as a QME."

Fishman demurred to the FAC. In June 2018, the trial court overruled his demurrer to the first cause of action for violation of the IFPA and sustained the demurrer without leave to amend to second cause of action for violation of the False Claims Act. As is relevant to the issues in this appeal, the trial court found that the doctrines of res judicata and collateral estoppel did not apply to the arbitrator's award because it was not yet final—Med-Legal had filed a motion to vacate the award,

6

which was denied, and Med-Legal's appeal of that order was pending.

## 2. *Judgment on the Pleadings*

### a. Fishman's motion

On June 16, 2020, Fishman filed a motion for judgment on the pleadings, seeking dismissal of the sole remaining cause of action for violation of the IFPA. Because the judgment in the arbitration action was now final, Fishman argued that the claim was barred by res judicata and collateral estoppel. Alternatively, Fishman asserted that the Medical Board's findings collaterally estopped the relators from pursuing this action.

Separately, Fishman argued that the cause of action was time-barred. In support, Fishman directed the trial court to Insurance Code section 1871.7, subdivision (*l*), which provides, in relevant part: "(1) An action pursuant to this section may not be filed more than three years after the discovery of the facts constituting the grounds for commencing the action. [¶] (2) Notwithstanding paragraph (1) no action may be filed pursuant to this section more than eight years after the commission of the act constituting a violation of this section or a violation of Section 549, 550, or 551 of the Penal Code." (Ins. Code, § 1871.7, subd. (*l*).) Because 2003, the year Dr. Fishman was certified as a QME, is more than eight years before 2017, the year this lawsuit was filed, it was time-barred.

### b. Relators' opposition

The relators opposed the motion, arguing, among other things, that collateral estoppel did not apply. The prior arbitration involved different parties (the State of California was not a party to that action) and a different cause of action (violation of the IFPA was not alleged in that action). Regarding

the Medical Board findings, the relators noted that (1) the Medical Board never found that the felony was not related to the practice of medicine (Lab. Code, § 139.21), and (2) the Medical Board never considered whether Dr. Fishman had made any misrepresentations on his application to the DIR Division of Workers' Compensation.

In response to Fishman's statute of limitations argument, the relators argued that the date Dr. Fishman allegedly made his misrepresentation (2003) did not start the clock. Rather, pursuant to Insurance Code section 1871.7, subdivision (b),[4] and as alleged in the FAC, "[e]ach billing statement and medical-legal report submitted by [Fishman] to insurance companies or self-insured employers constitute[s] a separate offense under the [IFPA], and therefore the statute of limitations is measured by the submission date of each such billing statement and medical legal report."

c. <u>Trial court order</u>

After entertaining oral argument, the trial court granted Fishman's motion for judgment on the pleadings, finding that the sole remaining cause of action was barred by the doctrine collateral estoppel. After all, the confirmed arbitration award against Med-Legal and in favor of Fishman was final; Med-Legal was the plaintiff in that action; and the arbitration determined the same issues as in the qui tam action. Specifically, in the arbitration, Med-Legal asserted that Dr. Fishman committed

---

[4]     The subdivision provides, in relevant part: "The penalty prescribed in this paragraph shall be assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation." (Ins. Code, § 1871.7, subd. (b).)

8

fraud by not reporting his felony conviction when he obtained his certification as a QME. "The basis for [this] lawsuit—the primary right that Relator alleges in this suit—is the same as the earlier arbitration for purposes of res judicata and collateral estoppel."

Separately, the trial court found that the claim was barred by the statute of limitations.

Although not necessary for the trial court's ruling, the trial court felt compelled to point out that "Dr. Fishman was not convicted of any felony 'related to his medical practice.' Rather, the federal indictment in which he was named states that he was charged with distributing controlled substances 'outside the usual course of medical practice and for no legitimate medical purpose.' [Citation.] Dr. Fishman pled guilty to a violation of 21 U.S.C. § 846, conspiracy to commit a drug offense (specifically, conspiracy to distribute narcotics and non-narcotic controlled substances). [Citation.] [Fishman has] not cited any authorities regarding how the [DIR—Division of Workers' Compensation] interprets the phrase 'felony or misdemeanor related to his or her practice' in 8 CCR § 10(c). However, it is clear that the actual indictment and conviction do not establish that the felony was related to Dr. Fishman's medical practice. In addition, even with all of the information about his conviction, once Dr. Fishman had successfully completed [his] probationary period in which his license was revoked, it was reinstated without restriction. [Citation.] The ALJ found, in that decision, that Dr. Fishman had 'demonstrated that he has the professional and ethical qualifications required of a departmental licensee and that he is capable of practicing medicine without special restriction.' [Citation.] The ALJ also noted that Dr. Fishman had 'worked so

hard to rebuild his professional life, and his profession is so important to him, that it is highly improbable that he would ever again engage in any activity, including criminal conduct, which would jeopardize that profession.' [Citation.]

"Based on these findings that Dr. Fishman was fully rehabilitated and entitled to practice medicine with no restrictions, the State of California would have no basis on which to prevent him from being certified as a QME. In addition, the Medical Board of California records clearly indicate that Dr. Fishman had been on probation. [Citations.] [Fishman] declare[s] that this information was obtained from the Department of Industrial Relations itself. [Citation.] Regardless, the document demonstrates that this information was readily available through the Medical Board of California website, and therefore readily available to the [Department of Industrial Relations—Division of Workers' Compensation], yet the agency never disqualified Dr. Fishman and continued to renew his QME applications."

The trial court concluded with the following observations: "Ultimately, one lesson emerges from a review of the history of this case and the many other cases in which the Relator sought damages from Dr. Fishman: persistence is one thing; *persecution* is another. Unfortunately, this case goes well beyond persistence into the realm of persecution.

"*Qui tam* actions were authorized in the State of California to 'promote the public interest' of its citizens—not to unjustly harass and persecute others with a personal vendetta, nor to attempt to unjustly line the pockets of unscrupulous lawyers. The instant case, as well as its underlying California proceedings, has not served or protected our fellow citizens at all. Indeed, it

10

has had the opposite effect by needlessly wasting the valuable resources of our courts and various administrative bodies. It is time to put this sad and pathetic litigation to an end.

"Enough is enough." (Fns. omitted.)

In a footnote, the trial court added: "Of course, given the custom and practice of the Plaintiffs' counsel, this particular litigation is unlikely to actually end until the U.S. Supreme Court summarily denies his petition for certiorari."

### 3. *Judgment and Objections*

On August 24, 2020, judgment was entered in favor of Fishman and against Med-Legal, GLC Operations, Nazemi, and GLCI.

On December 28, 2020, Nazemi and GLC Operations, through their attorneys Jenkins Kayayan, objected to the judgment on the grounds that they were not parties to the action and had not received notice that judgment was going to be entered against them.

Nazemi also offered a declaration asserting that the three entities (GLCI, Med-Legal, & GLC Operations) were not alter egos of one another, nor was he the alter ego of any such entity.

### 4. *Attorney Fees*

On February 2, 2021, the trial court awarded Fishman attorney fees. In so ruling, the trial court acknowledged that "at the time the judgment was entered on 8/24/20 it was not this Court's intention to have had Patrick Nazemi and/or GLCI, Inc. included in the judgment, as they were included in error by this Court *at that time*. Simply put: Neither were existing parties to

this case at that time."[5]  In light of that error, and the objections to the judgment, the trial court treated those objections "as a motion to correct the judgment by striking them as judgment debtors, or in the alternative, to determine whether they should be properly added as judgment debtors, under this Court's general powers" pursuant to Code of Civil Procedure section 187.

It then noted that "all interested parties were given ample opportunity to address the issue as to whether [the objectors] should, in essence, be judgment debtors in this case at this time." After reviewing the parties' briefs and arguments, the trial court denied the objectors' motion to correct the judgment, noting reasoning: "This Court has no doubt whatsoever that Mr. Nazemi (and all of his shell/alter-ego corporations) is the primary instigator and the actual *de facto* person who 'maintained' and prosecuted this entire case. There is ample evidence that demonstrates this fact, certainly by a preponderance of the evidence, if not even at a higher standard of proof. Quite tellingly, Mr. Nazemi never even proffered any explanation whatsoever, and certainly no reasonable or believable one, as to why he suddenly (and procedurally defectively) withdrew from this case after he filed it. Is it perhaps to be able to assert the objections and/or arguments he is making now to prevent him from being personally responsible for any attorney's fees or costs in this case?

---

[5]  Although the trial court indicated that it did not intend to include Nazemi and/or GLCI in the judgment, we assume it meant Nazemi and/or GLC Operations, as GLCI was a named relator in the FAC.

"Given the totality of the circumstances of this case, as well as the matters of which this Court has previously taken judicial notice, it is in the clear interests of justice, and within the 'spirit of the code,' to acknowledge reality: Patrick Nazemi was the primary and substantial instigator and maintainer of this lawsuit from beginning to end. He should not be allowed to escape his well-deserved responsibility for the reasonable attorney's fees and costs incurred by the victims of this specious and malicious lawsuit."

The trial court awarded attorney fees to Fishman and against all four appellants in the amount of $197,500.

5. *Appeals*

These timely appeals ensued.

C. Suspension Case

Meanwhile on November 21, 2017, Mr. Tym sent a letter to the Division of Workers' Compensation, expressing his "surprise[] that the [it] ha[d] to date not taken any action to suspend Dr. Bruce Fishman . . . from participation in the workers' compensation system."

We do not know if that letter is what prompted action by the agency. But, on April 19, 2018, the DIR Division of Workers' Compensation notified Dr. Fishman of its intent to suspend him from the workers' compensation system. Thereafter, Dr. Fishman's controlled entities were suspended as well.

The matter proceeded to a hearing before an ALJ, who found in favor of Dr. Fishman. The ALJ concluded that Dr. Fishman's "1983 conviction did not violate Labor Code section 139.21 as [his] conduct was not substantially related to the qualifications, functions or duties of a provider of services, during

his tenure as a physician in the California workers' compensation system since May 7, 1990."

Just nine days after the ALJ issued her decision, the administrative director of the Division of Workers' Compensation rejected the ALJ's findings and suspended Fishman. Fishman filed a petition for writ of mandate, asking the trial court to set aside the adverse decision. Two years later (following a remand to the administrative director), in August 2021, the trial court granted Fishman's petition for writ of mandate and set aside the DIR's suspension order. In so ruling, the trial court found that the DIR "prejudicially abused its discretion by failing to consider all relevant facts in connection with its determination of [Dr. Fishman's] crime is substantially related to the qualification, functions and duties of a provider of services in the workers' compensation system. By failing to consider all relevant facts—not just the crime—[the DIR] failed to proceed as required by law."

## DISCUSSION

The threshold issue on appeal is whether the trial court properly granted Fishman's motion for judgment on the pleadings pursuant to either the doctrine of collateral estoppel or the statute of limitations.

I. *Standard of review*

"'The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. . . . We review the [operative pleading] de novo to determine whether it alleges facts sufficient to state a cause of action under any theory. [Citation.]'

14

[Citation.]" (*Burd v. Barkley Court Reporters, Inc.* (2017) 17 Cal.App.5th 1037, 1042.)

That said, "courts will not close their eyes in situations where a complaint contains allegations of fact inconsistent with attached documents/exhibits, or allegations contrary to facts which are judicially noticed. [Citation.] Where facts appearing in attached exhibits or judicially noticed documents contradict, or are inconsistent with, the complaint's allegations, we must rely on the facts in the exhibits and judicially noticed documents." (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015.)

II. *Collateral estoppel*

Applying these legal principles, we conclude that the trial court erred in applying the doctrine of collateral estoppel when it granted Fishman's motion for judgment on the pleadings.

A. Relevant law

Collateral estoppel "precludes relitigation of issues argued and decided in prior proceedings." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.) The doctrine applies if five elements are met: (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding was final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. (*Ibid.*) "If judicially noticed records of prior litigation show the complaint is barred by collateral estoppel, the [motion for judgment on the pleadings] may be [granted]." (*Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667.)

15

B. <u>Analysis</u>

Here, Fishman asserts two grounds in support of the assertion that collateral estoppel applies:  (1) the arbitration decision against Med-Legal, and (2) the Medical Board's findings. Based upon the arguments presented and the appellate record, we cannot adopt either argument.

Regarding the arbitration decision, there are at least two elements of collateral estoppel not satisfied.  <u>First</u>, it is unclear whether the issue in the qui tam proceeding is the same as the one at issue in the arbitration case.  As set forth in our prior opinion, the issue in the arbitration case was Dr. Fishman's alleged failure to disclose his prior felony conviction *to Med-Legal*.  (See *Med-Legal Associates, Inc. v. Fishman*, *supra*, B284731, at pp. *4–*5.)  But the issue in this case is whether Dr. Fishman lied *to the DIR Division of Workers' Compensation* on his application to become a QME.  While they sound similar, they are not identical.

<u>Second</u>, there is no evidence that Med-Legal was in privity with GLCI or the objectors.  Understandably, the trial court seems to have made this assumption.  After all, GLC Operations (a relator in the original complaint) and GLCI, Inc. (a relator in the FAC), share the same initials, initials that mirror Green Lien Collections, Inc., a company owned by Nazemi.  (See *Med-Legal Associates, Inc. v. Fishman*, *supra*, B284731, at p. *1.)  Nazemi also was the individual who formed Med-Legal (*id*. at p. *2) and is still its Chief Executive Officer.  Nazemi also is an officer of GLC Operations.  No other individual has submitted a declaration as a representative of these corporate entities. Mr. Tym represents Med-Legal in multiple actions against Fishman; he also represented Nazemi and GLC Operations as

16

qui tam plaintiffs in the original complaint, and he represents GLCI in the FAC. While the lines appear blurred, at this point, there is nothing presented in the appellate record to support the trial court's finding that appellants are all alter egos of one another.

Regarding the Medical Board findings, again the issue in this proceeding is different than the one the Medical Board considered. The Medical Board reinstated Dr. Fishman's license; it did not consider he had "been convicted of a felony . . . related to his . . . practice" (Cal. Code Regs., tit. 8, subd. (c)) or that he made any misrepresentations on his application to be appointed a QME.

III. *Statute of limitations*

A. <u>Relevant law</u>

The parties agree that Insurance Code section 1871.7 governs. As set forth above, subdivision (*l*) provides for either a three-year or eight-year statute of limitations for claims arising under the IFPA. It is undisputed that Dr. Fishman's alleged fraud occurred in 2003, outside this statutory period. The issue presented is whether the date of Dr. Fishman's alleged misrepresentation starts the statutory period, or whether, pursuant to subdivision (b), Fishman's submission of each alleged fraudulent claim or medical legal report controls.

To answer this question, "'we apply well-established rules of statutory construction. The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Often, the words of the statute provide the most reliable indication of legislative intent. [Citation.] However, when the statutory language is itself ambiguous, we must examine the context in which the language appears, adopting the construction

17

that best harmonizes the statute internally and with related statutes. [Citation.] "'When the language is susceptible of more than one reasonable interpretation . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'" [Citation.]' [Citation.]" (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 447.)

    B. <u>Analysis</u>

    Based upon the arguments presented below and on appeal, we conclude that the relators are correct: The statute of limitations identified in Insurance Code section 1871.7, subdivision (*l*), is triggered by the submission of claims or medical legal reports, not the date when Dr. Fishman allegedly made false representations on his application to become a QME.[6] Subdivision (b) provides that "[t]he penalty prescribed in this paragraph shall be assessed for *each fraudulent claim presented* to an insurance company by a defendant and not for each violation." (Ins. Code, § 1871.7, subd. (b), italic added.) Moreover, Penal Code section 550, subdivision (a)(1), mentioned in Insurance Code section 1871.7, also refers to the presentation of "fraudulent claim[s]." The statutes are silent concerning the date of the alleged fraud underlying those submitted claims, leaving us to conclude that the date of the alleged fraud is

---

[6] In reaching this conclusion, we cannot ignore the barebones argument made by Fishman in the respondents' brief in defense of the trial court's determination.

18

irrelevant to the determination of when the statute of limitations commences.

This interpretation is consistent with the purpose of Insurance Code section 1871 et seq., which is to "prevent[] and punish[] the making of fraudulent claims." (*State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 449.) As one court has held, "a straightforward reading of these statutes makes clear that the class of persons who violate these sections are those who submit false or fraudulent claims to insurers." (*Id*. at p. 450.) It follows that we must look at the claims submitted, not the alleged underlying fraud, to determine whether an action under the IFPA is timely.

The FAC alleges that Fishman submitted false medical reports between 2003 and 2014. Because at least some of these unlawful claims were submitted within the statutory period, judgment on the pleadings should not have been entered. That said, it may well be that some of the submitted claims for which the relators seek penalties are time-barred. We do not address this issue; we leave that to Fishman to raise below in the appropriate format.

IV. *Additional thoughts*

We understand and are sympathetic to the trial court's obvious frustration with appellants and their lawyers in this case.[7] Numerous times, by multiple judges, they have been called

---

[7] Appellants' argument repeated suggestion notwithstanding, there is zero evidence of any bias by the trial court against any of the appellants.

out as needlessly contentious and unscrupulous.[8] (See, e.g., *Med-Legal Associates, Inc. v. Fishman*, *supra*, B284731, at p. *5.) And the appellate record of this appeal and the prior one have the earmarks of malice; it does seem that (1) Nazemi has a personal vendetta against Dr. Fishman, (2) Nazemi is controlling the corporate entities and directing the litigation, and (3) several judicial or quasi-judicial entities that have weighed in on the question of Dr. Fishman's honesty have determined that, in that particular case, he did not commit fraud. Unfortunately, given the procedural posture of this case and based upon what is presented in this appellate record, we cannot conclude that judgment can be entered at this time.

It follows that we decline Fishman's request for monetary sanctions. But we caution all parties and their counsel that monetary sanctions are always an option to both the trial court and this court, not to mention a referral to the State Bar.

---

[8] We note that Fishman's respondents' brief (not to mention some briefs filed in the trial court) is rife with inflammatory hyperbole and overkill in its critique of appellants' arguments on appeal. While we would like to think that such a reminder is unnecessary, we emphasize to all parties and their attorneys that "it is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law." (*People v. Chong* (1999) 76 Cal.App.4th 232, 243.) "Indeed, unwarranted personal attacks on the character or motives of the opposing party, counsel, or witnesses are inappropriate and may constitute misconduct." (*In re S.C.* 2006) 138 Cal.App.4th 396, 412.) It should go without saying that unfounded attacks on and insults to the trial court are never appropriate.

In light of this conclusion, appellants' challenge to the trial court's orders (1) awarding Fishman attorney fees, and (2) adding the objectors as judgment debtors are moot. That said, nothing herein should be construed as a finding that such determinations would not be proper at a future time.

**DISPOSITION**

The judgment is reversed. Parties to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

21